UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| STARIN MARKETING, INC., | ) |
|---|---|
| Plaintiff, | ) |
| v. | ) CAUSE NO.: 2:16-CV-67-TLS |
| SWIFT DISTRIBUTION, INC., d/b/a/ ULTIMATE SUPPORT SYSTEMS, | ) |
| Defendant. | ) |

**OPINION AND ORDER**

This matter is before the Court on the Defendant's Motion to Dismiss Plaintiff's Complaint [ECF No. 12], filed on April 20, 2016. On January 21, 2016, the Plaintiff, Starin Marketing, Inc., filed a two-count Complaint [ECF No. 4] against the Defendant, Swift Distribution, Inc., d/b/a Ultimate Support Systems. On February 23, 2016, the case was removed to federal court, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. The Defendant then moved to dismiss the Complaint, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), asserting that the Court lacks subject matter jurisdiction over the claim for declaratory judgment and the Complaint fails to state a claim upon which relief may be granted. On May 18, 2016, the Plaintiff filed its Response to the Defendant's Motion to Dismiss [ECF No. 22]. On May 31, 2016, the Defendant filed its Reply in Support of its Motion to Dismiss [ECF No. 24]. On July 19, 2016, the Court heard oral argument on the Defendant's Motion to Dismiss. With this matter now being fully briefed, the Defendant's Motion to Dismiss is granted in part and denied in part.

# COMPLAINT ALLEGATIONS

The Plaintiff is an Indiana corporation that markets and delivers, among other things, audio systems and equipment through its brand development services and procurement programs. (Compl. ¶ 1, ECF No. 4.) The Defendant is a California corporation "in the business of wholesaling sound systems and equipment." (*Id.* ¶ 2.) Given the compatibility of their businesses, the parties entered into an Amended and Restated Fulfillment and Distribution Agreement (the "Agreement") on August 7, 2014. (*Id.* ¶ 3.)

Under the Agreement, the Plaintiff "purchase[d] goods from [the Defendant], and [was] responsible for warehousing the goods, managing the inventory of the goods, [and] fulfillment of orders from [the Defendant's] customers." (*Id.* ¶ 4.) The Defendant "reconcile[d] and reimburse[d] [the Plaintiff] for costs of the goods sold to [the Defendant's] customers, together with interest thereon" and paid the Plaintiff a fixed monthly fee based on the value of monthly commissioned sales. (*Id.* ¶ 5.) Section 2.A.i.d., located in the portion of the Agreement titled "[Plaintiff] Obligations," stated that the Plaintiff shall:

> Maintain sufficient operating capital via dedicated credit facility, or otherwise, in order to support [the Plaintiff's] purchasing and inventory obligations for this Agreement. The Parties acknowledge that, as of the Effective Date, such obligations may not exceed Four Million Two Hundred Thousand Dollars ($4,200,000). If, at any time during the Term, [the Defendant] requests that [the Plaintiff] increase operating capital and overall inventory levels to support [the Defendant's] sales growth, but [the Plaintiff] is unable or unwilling to accommodate such request, [the Defendant] may terminate this Agreement upon written notice to [the Plaintiff], and without penalty. (Compl. Ex. A, at 4, ECF No. 4)

On January 21, 2016, the Plaintiff filed a lawsuit against the Defendant alleging two counts: First, that after entering into the Agreement, the Defendant allegedly breached Section 2.A.i.d. when it "shipped goods to [the Plaintiff], without [the Plaintiff's] consent, in an amount which . . . exceeded the $4.2 million limitation on purchasing and inventory obligations" and

2

forced the Plaintiff to purchase those excess shipments, (Compl. ¶ 11), and when it "failed to make timely reimbursement and interest payments to" the Plaintiff. (*Id.* ¶¶ 11–12.) Second, that the Plaintiff seeks a declaratory judgment because it "retains significant inventory which [the Plaintiff] has purchased from [the Defendant] in conformity with [the Plaintiff's] fulfillment obligations under the Agreement, and which [the Plaintiff] desires to re-label and resell in order to mitigate the damages resulting from [the Defendant's] breaches of the Agreement." (*Id.* ¶¶ 13–17.)

## STANDARD OF REVIEW

Rule 12(b)(1) provides that a party may assert the defense of lack of subject matter jurisdiction by motion. Fed. R. Civ. P. 12(b)(1). "Subject-matter jurisdiction is the first question in every case, and if the court concludes that it lacks jurisdiction it must proceed no further." *Illinois v. City of Chi.*, 137 F.3d 474, 478 (7th Cir. 1998). When considering a motion to dismiss for lack of subject matter jurisdiction, a court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff. *Alicea-Hernandez v. Catholic Bishop of Chi.*, 320 F.3d 698, 701 (7th Cir. 2003).

Similarly, when reviewing a complaint attacked by a Rule 12(b)(6) motion, a court must accept all of the factual allegations as true and draw all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). The complaint need not contain detailed facts, but surviving a Rule 12(b)(6) motion "requires more than labels and conclusions . . . . Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for

the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

When a party seeking dismissal under Rule 12(b)(6) submits documents with its motion to dismiss, courts can either ignore the documents or convert the motion to one for summary judgment. Fed. R. Civ. P. 12(d); *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002); *Venture Ass'n Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993). Here, both Parties filed affidavits from various company employees and exhibits of company emails, but questions exist regarding the validity and scope of those documents on issues unrelated to the Agreement. Therefore, the Court does not find it appropriate to convert the Defendant's Motion to Dismiss to one for summary judgment at this time. The Court disregards those additional documents submitted by the Parties and confines its analysis to the Complaint and the documents referenced in and attached to the Complaint. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

## ANALYSIS

This Court has subject matter jurisdiction over the case because the matter in controversy exceeds the sum or value of $75,000.00 and is between citizens of different states. 28 U.S.C. § 1332. This Court has the authority to grant declaratory relief pursuant to 28 U.S.C. § 2201.

### A.     Choice of Law

A federal court exercising diversity jurisdiction must apply the substantive law of the forum in which it sits, *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938), including that pertaining to choice of law, *Klaxon Co. v. Stentor Elec. Manuf. Co.*, 313 U.S. 487, 496 (1941). In

Indiana, contractual choice-of-law provisions apply to the substantive law governing claims arising out of the contract. *Smither v. Asset Acceptance, LLC*, 919 N.E.2d 1153, 1157–58 (Ind. Ct. App. 2010).

The Agreement between the Parties contains a choice-of-law provision, which states that California law governs any disputes between the parties. (Compl. Ex. A, at 19.) The Parties do not contest the Agreement's validity and also agree that the choice-of-law clause governs. Therefore, the Court will apply California law to the Plaintiff's breach of contract claim.

## B. Breach of Contract (Count I)

In Count I, the Plaintiff alleges that the Defendant committed breach of contract. To succeed on a breach of contract claim in California, a plaintiff must prove: (1) the existence of a contract, (2) the plaintiff's performance or excuse for non-performance, (3) the defendant's breach, and (4) damages. *Oasis W. Realty, LLC, v. Goldman*, 250 P.3d 1115, 1121 (Cal. 2011). In support of its Motion to Dismiss, the Defendant first argues that it did not breach the Agreement because the $4,200,000 credit limit in Section 2.A.i.d. imposes a duty only upon the Plaintiff, not the Defendant. Second, the Defendant argues that the Plaintiff's Complaint fails to allege that the Plaintiff had performed or allege an excuse for its non-performance. The Defendant does not dispute the existence of a contract or damages.

### 1. *Breach of the $4.2 Million Cap Obligations Under the Agreement*

Under California contract law, "[a] contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." Cal Civ. Code § 1636. For a written contract, "the intention of the

parties is to be ascertained from the writing alone, if possible," and a court must consider the whole contract "so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." *Id.* §§ 1639, 1641.

"Where the meaning of the words used in a contract is disputed, the trial court must provisionally receive any proffered extrinsic evidence which is relevant to show whether the contract is reasonably susceptible of a particular meaning." *Morey v. Vannucci*, 75 Cal. Rptr. 2d 573, 578 (Ct. App. 1998) (citing *Pac. Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co.*, 442 P.2d 641, 645–46 (Cal. 1968)).

As a preliminary matter, the Agreement between the Plaintiff and the Defendant is structured like an output contract. The Defendant sends its products to the Plaintiff, the Plaintiff pays the Defendant, and the Plaintiff holds the Defendant's products as inventory until further instructions. The Defendant notifies the Plaintiff once a purchaser is located, the Plaintiff ships the products to that purchaser, and the Defendant reimburses the Plaintiff for costs plus interest. This process is repeated with the Defendant's product output.

Here, the Parties dispute the meaning of Section 2.A.i.d. of the Agreement. The Plaintiff asserts that the plain text of Section 2.A.i.d. creates a $4,200,000 "limitation on purchasing and inventory obligations," and is thus a credit limit on the quantity that the Defendant may send to the Plaintiff. (Compl. ¶ 11). The Defendant argues that the plain text of Section 2.A.i.d. imposes a purchasing and inventory obligation on the Plaintiff that may exceed $4,200,000 when the Defendant requests that the Plaintiff go over that threshold. In essence, Section 2.A.i.d. creates a "floor for [the Plaintiff], but not a ceiling for either party." (Def.'s Br. Supp. Mot. Dismiss 12, ECF No. 13.) Because of this dispute as to the meaning of Section 2.A.i.d., the Court may consider extrinsic evidence submitted by the parties. *Morey*, 75 Cal. Rptr. 2d at 578.

6

To support its interpretation, the Defendant notes that Section 2.A.i.d. is located in a portion of the Agreement entitled "[Plaintiff] Obligations." This provision places a duty on the Plaintiff to provide credit, but no reciprocal duty on the Defendant. Rather, the Defendant claims that it is allowed to seek increases in its credit line from the Plaintiff without prior approval. If the Plaintiff is unable or unwilling to satisfy the Defendant's request, Section 2.A.i.d. authorizes the Defendant to terminate the Agreement. Thus, the Defendant could not have breached the Agreement because Section 2.A.i.d. expressly requires nothing of the Defendant, as it imposes obligations only on the Plaintiff.

In rebuttal, the Plaintiff offers extrinsic evidence to show that Section 2.A.i.d. prohibits the Defendant from exceeding the $4,200,000 credit limit unless both Parties consent. The Plaintiff's Response included copies of email exchanges between the Parties during their contract negotiations. On August 1, 2014, Bill Pak, the Plaintiff's CEO, balked at an earlier contract proposal because it included no credit limit: "[this proposal] [a]ppears to require [the Plaintiff] to provide [the Defendant] with an unlimited credit line. We cannot agree to this for obvious reasons." (Pl.'s Resp. Ex. B, at 1, ECF No. 23-2). In response, Mike Belitz, the Defendant's CEO, stated that the Defendant did not "expect total control of the credit line" and would "treat this as if it was [the Defendant's] own credit line with a limit." (*Id.*) Thus, Section 2.A.i.d obligated the Defendant to obtain the Plaintiff's prior approval before sending more than $4,200,000 worth of inventory; the Defendant's failure to do so here constituted breach.

Based upon the pleadings and extrinsic evidence presented, the Court finds that the Plaintiff's interpretation of Section 2.A.i.d. is more likely what the Parties intended at the time of contracting. Under that interpretation, the Defendant is obligated to seek the Plaintiff's consent

before exceeding the $4,200,000 credit limit.[1] If the Defendant shipped goods to the Plaintiff in excess of that $4,200,000 credit limit and failed to obtain the Plaintiff's prior consent, the Defendant would have breached the Agreement. That situation is precisely what the Plaintiff alleged in the Complaint: "[the Defendant] has shipped goods to [the Plaintiff], without [the Plaintiff's] consent, in an amount which has exceeded the $4.2 million limitation." (Compl. ¶ 11.)

Accordingly, the Plaintiff's allegations of the Defendant's breach of contract are sufficient for purposes of this Motion to Dismiss.[2]

**2.**    *Plaintiff's Failure to Allege Performance or Excuse Its Non-Performance*

Under California law, a party cannot recover for breach of contract if that party failed to allege either performance or an excuse for non-performance. An exception arises "[w]hen a party's failure to perform a contractual obligation constitutes a material breach of the contract," which discharges the other party's duty to perform. *Brown v. Grimes*, 120 Cal. Rptr. 3d 893, 902 (Ct. App. 2011); *Loral Corp. v. Moyes*, 219 Cal. Rptr. 836, 844 (Ct. App. 1985); *see also* Cal. Civ. Code § 1440.

---

[1] This interpretation is consistent with the requirement of "good faith" inherent in all output contracts. Cal. Comm. Code (CCC) § 2306. "If an estimate of output or requirements is included in the agreement, no quantity unreasonably disproportionate to it may be tendered or demanded." *Id.* § 2306 cmt. 3. The Defendant's interpretation is questionable because it would authorize the Defendant to grossly exceed the $4,200,000 credit limit and then terminate the Agreement when the Plaintiff could not obtain sufficient credit; such an arrangement would be inconsistent with the "good faith" requirement.

[2] Separately, the Defendant argues that the Complaint "does not identify any amounts that are allegedly delinquent, any Sections of the Agreement under which any amounts could be deemed delinquent, or explain the factual circumstances under which any amounts became delinquent." (Def.'s Br. Supp. Mot. Dismiss 9.) It is technically correct that the Complaint does not allege a sum certain that the Defendant is delinquent, but the Court's finding renders this argument moot. The Plaintiff sufficiently alleged that the Defendant breached when it failed to obtain the Plaintiff's consent before exceeding the Agreement's $4,200,000 credit limit. Omitting a sum certain of the Defendant's allegedly delinquent amounts does not make the Plaintiff's breach of contract claim any less plausible.

The Defendant argues that the Complaint fails to allege facts showing that the Plaintiff performed all aspects of the Agreement or that excused the Plaintiff's non-performance. Specifically, the Defendant identified as unperformed the Plaintiff's "properly stor[ing] and car[ing] for products," "provid[ing] marketing and sales support," "maintain[ing] a sales team," and "properly us[ing] Ultimate's trademarks," among other issues. (Def.'s Reply 2–3, ECF No. 24.) However, the Plaintiff alleged that the Defendant committed a "material breach[] of the Agreement" when it exceeded the $4,200,000 credit limit. (Compl. ¶¶ 11–12.) Because one party's material breach discharges the other party's duty to perform under California law, *Brown*, 120 Cal. Rptr. 3d at 902; *Loral Corp*, 219 Cal. Rptr. at 844, the Plaintiff has alleged facts sufficient to excuse its non-performance under the Agreement.

Accordingly, the Plaintiff's breach of contract claim includes specific allegations that suggest its plausibility. Even though this claim may be unsupportable after discovery, it does not warrant dismissal at this stage of the proceedings. The Court denies the Defendant's Motion to Dismiss Count I (Breach of Contract) of the Plaintiff's Complaint.

## C. Declaratory Judgment Claim (Count II)

In Count II, the Plaintiff seeks a declaratory judgment against the Defendant. A federal court sitting in diversity applies the federal Declaratory Judgment Act. *See Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 239–40 (1937); *Bourazak v. N. River Ins. Co.*, 379 F.2d 530, 533 (7th Cir. 1967); *Inst. for Study Abroad, Inc. v. Int'l Studies Abroad, Inc.*, 263 F. Supp. 2d 1154, 1156–57 (S.D. Ind. 2001). Under the Declaratory Judgment Act, a court may "declare the rights and other legal relations of any interested party" if an "actual controversy" of a justiciable nature exists, as required by statute and the Constitution. 28 U.S.C. § 2201(a). A

court maintains broad discretion in determining whether to entertain a declaratory judgment, *Winton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995), and "may properly decline to assume jurisdiction in a declaratory action when the other remedy would be more effective or appropriate." *City of Highland Park v. Train*, 519 F.2d 681, 693 (7th Cir. 1975).

Requesting declaratory judgment, the Plaintiff argues that the Agreement's terms allow the Plaintiff to relabel and resell any of the Defendant's inventory currently in the Plaintiff's possession. The Defendant asserts that the Court lacks subject matter jurisdiction over a declaratory judgment claim because the Plaintiff failed to properly plead a breach of contract claim and because there is no justiciable controversy between the Parties. (Def.'s Br. Supp. Mot. Dismiss 12–14.)

The argument that this Court lacks subject matter jurisdiction over the Plaintiff's Complaint was predicated on the Court dismissing the Plaintiff's breach of contract claim under Rule 12(b)(6). But the Court has already found that the Plaintiff's allegations of the Defendant's breach of the Agreement were plausible. Accordingly, this argument no longer applies.

But even if the Defendant's argument was not dependent upon the breach of contract claim, the argument that there is no justiciable controversy between the Parties is more persuasive. The Defendant does not read "the Agreement to *require* that [the Plaintiff] purchase *all* products shipped by Ultimate." (Def.'s Reply 11 (emphasis added).) According to the Defendant, under the Agreement the Plaintiff voluntarily assumed any excess inventory that the Defendant shipped, which means that there cannot be a justiciable controversy as to the rights and ownership of any excess inventory. Alternatively, the Defendant states that it "timely reduced the inventory held by [the Plaintiff] to below $4.2 million" after the Plaintiff notified the Defendant in January 2016 of the excess inventory. (Def.'s Br. Supp. Mot. Dismiss 13.)

Both of these arguments require interpreting the Agreement's terms to determine whether the Defendant breached the Agreement. As such, any decision on declaratory relief is inevitably bound up in the breach of contract claim. On the one hand, finding a breach of the Agreement could entitle the Plaintiff to a declaratory judgment on relabeling and reselling the inventory. On the other hand, finding no breach of the Agreement would likely bar any declaratory relief for the Plaintiff. Because of this, the Court believes that proceeding solely upon the breach of contract claim will "be more effective or appropriate" a remedy for the Plaintiff than maintaining an additional claim for declaratory judgment. *City of Highland Park*, 519 F.2d at 693.

Accordingly, the Court grants the Defendant's Motion to Dismiss Count II (Declaratory Judgment). The Court's dismissal is without prejudice to the Plaintiff's ability to later amend its Complaint and allege a declaratory judgment action, should the breach of contract claim no longer adequately afford relief to the Plaintiff.

**CONCLUSION**

Based on the foregoing, the Court GRANTS IN PART and DENIES IN PART the Defendant's Motion to Dismiss the Plaintiff's Complaint [ECF No. 12]. The Court DENIES the Motion as to Count I but GRANTS the Motion as to Count II. The Court ORDERS that Count II be DISMISSED WITHOUT PREJUDICE. Any amended complaint is to be filed by September 30, 2016.

SO ORDERED on August 22, 2016.

    s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
FORT WAYNE DIVISION